# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

Case no. 3:20-cv-03069-FLW-TJB

|  |  |
|---|---|
| **WILLIAM MISKOKOMON and CARLA BIGHAM**, individually on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**PALMER ADMINISTRATIVE SERVICES, et al.**,<br><br>Defendants. | **CLASS ACTION** |

## FIRST AMENDED CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiff William Miskokomon ("Miskokomon") and Plaintiff Carla Bigham ("Bigham") bring this Class Action Complaint and Jury Trial Demand against Defendant Palmer Administrative Services, Inc. ("Palmer") and Defendant Ox Car Care, LLC ("OCC") to stop Defendants from violating the Telephone Consumer Protection Act by making unsolicited, autodialed and/or pre-recorded calls to consumers without their consent, including calls to consumers registered on the National Do Not Call registry, and calls to consumers that have demanded that Defendants stop calling, and to obtain injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## INTRODUCTION

1.      Palmer sells aftermarket extended vehicle warranties to vehicle owners throughout the U.S.

2.      Palmer engages in both direct telemarketing solicitations to consumers and engages other companies to act on Palmer's behalf to market and promote Palmer's warranty products directly to consumers.

3.      One such company that solicits consumers over the phone is OCC, which markets vehicle warranty plans to consumers exclusively on Palmer's behalf and for Palmer's direct financial benefit.

4.      To market Palmer's warranty plans, OCC resorts to unsolicited telemarketing through the use of an autodialer and calls to consumers that have their phone numbers registered with the National Do Not Call Registry ("DNC").

5.      Palmer benefits directly from the illegal practices employed by OCC. It profits from every sale, and knows or should know of the sales methods used by OCC on Palmer's behalf.

6.      In Plaintiff Miskokomon's case, Defendant Ox Car Care made multiple, autodialed calls to Plaintiff on Palmer's behalf, despite Plaintiff having his phone number registered with the DNC to prevent such calls, and despite Plaintiff's multiple requests for the calls to stop.

7.      In Plaintiff's Bigham's case, she received at least 10 unsolicited, prerecorded calls to her cellular phone by or on behalf of Palmer, despite specifically asking an agent of Palmer for the calls to stop, and despite the fact that Bigham registered her cellular phone number on the DNC.

8.      In response to these calls, Plaintiffs file this lawsuit seeking injunctive relief, requiring Defendants to cease placing unsolicited calls to consumers using an automatic telephone dialing system without consent and otherwise calling telephone numbers registered on the DNC, as well as an award of statutory damages to the members of the Classes and costs.

## PARTIES

9.     Plaintiff Miskokomon is a Shelby Township, Michigan resident.

10.    Plaintiff Bigham is a Stoutsville, Ohio resident.

11.    Defendant Palmer is a Delaware corporation headquartered in Ocean, New Jersey. Defendant conducts business throughout this District, New Jersey, and the United States.

12.    Defendant OCC is a Delaware limited liability company headquartered in Irvine, California. Defendant conducts business throughout this District, New Jersey, and the United States.

## JURISDICTION AND VENUE

13.    This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

14.    This Court has personal jurisdiction over both Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Palmer is headquartered in New Jersey and directed Ox Car Care to make calls on its behalf from this District.

## COMMON ALLEGATIONS

### Defendant OCC Markets Vehicle Warranty Protection Plans Exclusively on Behalf of Palmer

15.    OCC places calls to consumers on behalf of Palmer, selling vehicle warranty plans for which Palmer is the administrator. OCC does not sell warranty plans on behalf of any other warranty providers.

16.    On its website oxcarcare.com, OCC lists the different vehicle warranty plans it offers: The Elite Exclusionary Plan, The Royal Select Plan, The Premier Plan, The Classic Plan, The PowerTrain and The Basic Plan. These same *exact plans* are listed on Palmer's corporate website palmeradministration.com/plans, including the exact same wording used to describe each

3

plan as seen below:



17.     Between at least November 2016 to August 2018, OCC even used the same

graphics and descriptions of the plans as seen below like Palmer above:



4

18.     Up until at least August 2018, OCC even provided a link on its website to a sample vehicle service agreement OCC was marketing on Palmer's behalf:



19.     In fact, any consumer that purchases an OCC marketed vehicle warranty plan and then seeks to cancel it must seek a refund directly from Palmer.[3]

20.     Therefore it is clear that Palmer contracts with and is effectively paid by the consumers OCC markets to, and that Palmer is the seller of the products OCC markets.

21.     Palmer knows or should know of the unlawful practices OCC employs on Palmer's behalf.  In fact, on Palmer's own Better Business Bureau page there are numerous complaints about consumers receiving unsolicited calls marketing Palmer warranties:

- "You call people out of the blue and convince them that they 'need' to buy a warranty for their vehicle and you get their money immediately with the promise that if they are unsatisfied within 30 days that they can get a full refund and cancel."[4]

---

[1] https://web.archive.org/web/20180815103212/http://oxcarcare.com/img/Select.pdf
[2] https://web.archive.org/web/20180815103212/http://oxcarcare.com/img/Select.pdf
[3] *Id.*
[4] https://www.bbb.org/us/nj/ocean/profile/extended-warranty-contract-service-companies/palmer-administrative-services-0221-90163943/customer-reviews

- "I purchased a contract agreement in January, 2018, after weeks of harassing and undesired solicitations, as many as a dozen in a day."[5]

- "Where do I start? They call me non stop using spoofed phone numbers. Been going on for at least two years."[6]

- "I have had several calls from [different] phone numbers, why [not] use your own number."[7]

22.    Similar online complaints exist for OCC.[8]

**OCC Markets Palmer's Products by Making Autodialed Calls to Consumers Without Their Consent and Regardless of Whether Their Phone Numbers Are on the DNC**

23.    As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

24.    Yet in violation of this rule, Defendants do not have consumers' express written consent prior to making autodialed and other solicitation calls to them.

25.    In placing some or all of the calls on Palmer's behalf that form the basis of this Complaint, OCC used an automatic telephone dialing system ("ATDS" or "autodialer") in violation of the TCPA. Specifically, the hardware and software used by Defendants has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls

---

[5] *Id.*
[6] *Id.*
[7] https://www.revdex.com/reviews/palmer-administrative-services/922777
[8] https://800notes.com/Phone.aspx/1-727-440-8708

simultaneously and automatically connecting answered calls to then available callers and

disconnecting the rest (all without human intervention).

26.     Not surprisingly, there are numerous online complaints about OCC's calls on

Palmer's behalf from consumers who never consented to be called, including consumers that

requested that Defendants stop calling:

- "Ox Car Care telemarketers have called my cellphone repeatedly to advertise extended car warranties, in spite of the fact that I am on the national Do Not Call List. I have sent email correspondence to them with no response from the company. I would like contact from them in order to settle this matter."[9]

- "Claim to be with Ox Car Care and they say they sell warranties for cars after original expires. $3,089 for 75,000 miles coverage. Say they are selling Palmer Insurance Co warranties. Idiots. Pests. Call and call and call. I wasted 15 minutes of their time to get even."[10]

- "Knew about previous car I owned. Tried to sell car warranty on car I currently lease. Told them that I lease new every 3 years. Doesn't stop the calling."[11]

- "These people call me seven to ten times a day,I want it to stop…."[12]

- "They knew my Car Type and model."[13]

- "Unsolicited call"[14]

### Defendant Palmer Also Utilizes the d/b/a Royal Protection Plan to Sell Its Own Auto Warranty Protection Plans Directly

27.     In addition to using third-party companies to sell its auto warranty protection

plans, Palmer set-up Royal Protection Plan so it could sell its plans direct to consumers.

28.     A number of proofs exist online illustrating the connection between the two

companies – Palmer and Royal Protection Plan.

---

[9] https://www.bbb.org/us/ca/irvine/profile/auto-warranty-plans/ox-car-care-1126-172015721/complaints
[10] https://800notes.com/Phone.aspx/1-727-440-8708
[11] *Id.*
[12] *Id.*
[13] https://www.shouldianswer.com/phone-number/7274408708
[14] https://www.shouldianswer.com/phone-number/6162166941

29.     First, RoyalProtectionPlan.com and RoyalPlanOnline.com (both hosted on the exact same IP address) are registered to Michael Shaftel the same owner of Defendant Palmer and registered owner of PalmerAdmin.com

Palmer released a press release on March 28, 2018 regarding the auto warranty industry, identifying the fact that the release was on behalf of both Palmer and Royal Protection Plan:

### Boosts In Royal Protection Plan Popularity Due To Newer Car Maintenance Costs

**Palmer Admin & Royal Protection Plan of New Jersey Continues to thrive**



March 28, 2018 06:31 ET | **Source:** Palmer Administration

Asbury Park, New Jersey, March 28, 2018 (GLOBE NEWSWIRE) -- According to the rising number of Royal Protection Plan and Palmer Admin Reviews, the high expense of maintaining newer car models have increased the popularity of extended auto warranties. It's really no surprise; costly repairs are a byproduct of the technological advances in today's cars, and it's only getting worse.

Consumer Reports warns, once the initial warranty period is over, out-of-pocket expenses can skyrocket. For years, extended auto warranties have been a controversial bet, and almost 55% of consumers would say they never used the extended warranty. Fast forward to 2017, and that number drastically dropped down to just 30%. The cost of owning a new car today has increased more than owners can fully appreciate.

[15]The sub-headline for the press release states "Palmer Admin & Royal Protection Plan of New Jersey."[16]

30.     The website for Royal Protection Plan (royalprotectionplan.com) is registered to Michael Shaftel, the CEO of Palmer:

---

[15] https://www.globenewswire.com/news-release/2018/03/28/1454503/0/en/Boosts-In-Royal-Protection-Plan-Popularity-Due-To-Newer-Car-Maintenance-Costs.html

[16] *id*



31.    The address for Royal Protection Plan is also the same as the address for Palmer:

32.    Finally, the vehicle service agreement examples provided on the

royalprotectionplan.com website explicitly shows the name Palmer:

---

[17] https://domainbigdata.com/royalprotectionplan.com
[18] http://www.royalprotectionplan.com/home/contact
[19] https://www.palmeradministration.com/contact



**VEHICLE SERVICE AGREEMENT**

**Palmer Administrative Services, Inc.**
**3430 Sunset Avenue**
**Ocean, NJ  07712**                    20

**Palmer Solicits Automobile Warranty Plans Using Prerecorded Messages**
**Regardless of Whether it is Calling Phone Numbers Registered on the DNC**

33.     As explained by the Federal Communications Commission ("FCC") in its 2012

order, the TCPA requires "*prior express written consent* for all … prerecorded [solicitation] calls

to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing*

*the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830

¶ 2 (Feb. 15, 2012).

34.     Yet in violation of this rule, Defendant and/or its agents fail to obtain express

written consent before making prerecorded voice sales calls to consumers such as Plaintiff.

35.     Due to the nature of the prerecorded calls that Plaintiff and many other consumers

received, it cannot be determined if Palmer directly placed the prerecorded calls on its own, or

through a third-party. As has been established, Palmer did set-up Royal Protection Plan in order

to sell its auto warranty protection plans.

36.     The Federal Communication Commission has instructed that sellers such as

Palmer may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties
> to unsupervised third parties would leave consumers in many cases without an effective
> remedy for telemarketing intrusions. This would particularly be so if the telemarketers
> were judgment proof, unidentifiable, or located outside the United States, as if often the

---

[20] http://www.royalprotectionplan.com/download/TRPPROAC66.pdf

case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the*

*TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).*

37.    In addition, even if Palmer is not placing the calls directly, Palmer benefits

financially from each sale it acquires through the agents that place the calls.

38.    There are many complaints posted online from consumers regarding calls from or

on behalf of Palmer, including numerous complaints directed to Palmer through the Better

Business Bureau (BBB) page for Royal Protection Plan:

- "Stop calling me. This is ridiculous and the agent wanted to argue with me when I asked her. A recording answered the phone sounding just like a person. When does this stop."[21]

- "The company is in violation of the FCC with using robo calls… I have asked them several times to stop calling me and it continues. Before you go further ask them for their phone number and call them back to see if they are real and you will not get a phone number from them."[22]

- "This company uses robot calling using numbers that appear to be local (in violation of FCC rules) and call just about ever number in an exchange. I have received 17 calls on 3 phone lines."[23]

- "I am being bombarded with at least 20 calls a day soliciting insurance quotes and polices. Do NOT do business with this company. It's a scam. I've called them and asked them to stop and they told me I must have visited a different website and provided my information to someone other than them… even though EVERY SINGLE AGENT that calls identifies themselves as an E Health Agent."[24]

- "Negative trust issues, starting with multiple phone calls from a variety of

---

[21] https://www.bbb.org/us/nj/ocean/profile/marketing-consultant/royal-protection-plan-0221-9002759/customer-reviews
[22] *id*
[23] Id.
[24] Id.

numbers from several different states…"[25]

- "Called to inform me my warranty had expired on vehicle I haven't owned for 4 years, tried to sell me extended warranty"[26]

- "BS company!!! After a bunch of calls stating that " this is your last chance for coverage" I responded but gave them fake info and they still acted like I was in their system LOLOLOL!!! Then I started reading these BBB negative complaints to the lowlife and he hung up in my face. You are a fool if you ever buy anything from this company."[27]

- "Where do I start? They call me non stop using spoofed phone numbers. Been going on for at least two years."[28]

## PLAINTIFF MISKOKOMON'S ALLEGATIONS

### On Palmer's Behalf, OCC Repeatedly Called Plaintiff Without His Consent, Despite Plaintiff Registering His Phone Number on the DNC

39.     On June 1, 2011, Plaintiff registered his telephone number on the DNC.

40.     In the middle of 2017, Plaintiff began receiving autodialed calls from OCC on behalf of Palmer to his cell phone using phone numbers that were not in service when Plaintiff would try calling them back. When Plaintiff would answer the calls, there would be a several second-long audible pause before a live agent would come on the line, indicating the use of an autodialer.

41.     The live agents would tell Plaintiff that they were calling about a warranty for a vehicle that Plaintiff does not own and some agents identified themselves as Ox Car Care. Plaintiff would reply by telling them that he has never owned the car and would specifically request that they stop calling him.

42.     Despite his many stop requests, OCC continued to place autodialed calls to

---

[25] Id.
[26] https://findwhocallsyou.com/3803331120?CallerInfo
[27] https://www.bbb.org/us/nj/ocean/profile/extended-warranty-contract-service-companies/palmer-administrative-services-0221-90163943/customer-reviews
[28] *id*

Plaintiff on Palmer's behalf.

43.     On August 22, 2018 at 8:33 AM, Plaintiff sent an email to OCC demanding that

OCC stop placing calls to his cell phone:

**From:** WIlliam Miskokomon [mailto:█████████████]
**Sent:** Wednesday, August 22, 2018 8:33 AM
**To:** info@oxcarcare.com
**Subject:** Please stop calling me.

Ox Car Care,

Please accept this e-mail as a final notice for you to stop calling my cell phone. you have been calling for a car that I never owned and I have no interest or need to buy an extended warranty. I have asked your people to please remove me from your list and don't call again. I have reported you to several agencies and will work with local law enforcement to get the harassing calls to stop. Your office calls me twice a week for over one year.

In addition, I have filed a complaint with the Federal Government, The State of Michigan and the Better Business Bureau. I will be submitting a complaint to the State of California as well.

I cannot and will allow your company to harass me any longer. I have detailed records of the calls and will now start recording the calls as well.

Sincerely,

Bill Miskokomon
███████-0669

44.     OCC responded to Plaintiff's email on August 22, 2018 at 10:39 AM claiming

that Plaintiff's cell phone number was added to OCC's internal do not call list.

45.     On August 22, 2018 which was more than one year from the time the calls first

started, Plaintiff received three autodialed calls to his cellular phone. OCC called him at 10:53

AM using phone number 313-209-6801, 11:03 AM using OCC's main phone number 844-299-

0885[29] and at 6:55 PM using phone number 616-216-6941.

46.     Plaintiff does not have a relationship with Defendants and has never consented to

their calling him in writing or otherwise.

47.     The unauthorized telephone calls made by OCC of Palmer's behalf, as alleged

---

[29] https://www.oxcarcare.com/

herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Miskokomon's use and enjoyment of his phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

48.     Seeking redress for these injuries, Miskokomon, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA, which prohibits unsolicited telemarketing using an autodialer and/or to consumers whose phone numbers are registered on the DNC.

## PLAINTIFF BIGHAM'S ALLEGATIONS

### Palmer Placed Prerecorded Calls Directly to Plaintiff Bigham Without Her Consent, Despite Her Requests for the Calls to Stop

49.     Plaintiff Bigham registered her cellular phone number on the DNC on August 26, 2009 in order to avoid receiving unwanted solicitation calls.

50.     On December 20, 2018 at 11:51 AM, Bigham received a call from Defendant using phone number 567-290-1306 on her cellular phone. The call was regarding an extended automobile warranty. The name of the company was not identified during this call.

51.     On December 20, 2018 at 5:11 PM, Bigham received a prerecorded call from Defendant using phone number 740-473-7954 on her cellular phone regarding a solicitation about a car extended warranty. The call featured a prerecorded agent that is designed to sound real before transferring the call to a live agent.

52.     A consumer reported the phone number 740-473-7954 on March 18, 2020 and posted a recording of the virtual agent they heard when answering the call which when played features a pre-recorded voice solicitating an extended auto warranty.



# **(740) 473-7954** is a Vehicle Warranty Scam
Do not answer.

---

**LISTEN**

▶   0:00  ────────────────────────────────── 🔊

**TRANSCRIPT**   *Hi I'm calling from vehicle servicing to reach out regarding the factory warranty on your vehicle our records indicate it's past the coverage expiration is that right OK Well I see the vehicle here on file is actually still eligible for vehicle warranty protection for security reasons let me get a specialist who can give you the details on the vehicle and explain your available options leasehold. Thanks for holding all of our coverage specialists are presently busy helping other customers please stay on the line to maintain your call priority surprise expenses especially costly auto repairs or the cost of replacing a pricey electrical part or air conditioner or transmission bust your monthly budget you are the next color in queue to continue holding press 5 now or to request a call back from the next available agent press 9 now estimated call back.*

**DATE BLOCKED**   March 18, 2020 [30]

53.     On January 15, 2019 at 11:07 AM, Bigham received another prerecorded call to her cellular phone from Defendant using the phone number 740-643-8786. The message Bigham heard is exactly the same message she heard when she answered the call from 740-473-7954.

54.     On January 22, 2019 at 3:25 PM, Bigham received yet another prerecorded call from Defendant using the phone number 740-643-8786 to her cellular phone. Again, she heard the same prerecorded message that she heard when answering the call from 740-473-7954 and from the January 15, 2019 740-543-8786 call. This time, Plaintiff Bigham acted as if she was interested to determine who was responsible for the unsolicited telemarketing calls she had been receiving. Bigham was transferred from the virtual agent to a live agent. Bigham spoke with the live agent, who identified the website for the company as royalprotectionplan.com. Bigham then spoke to a supervisor who identified herself as being Elizabeth Davis. Bigham told Davis that her phone number is on the DNC and made it clear that she wants the calls stopped.

55.     Despite her clear stop request, Plaintiff received additional prerecorded calls from Defendant to her cellular phone on:

    • February 26, 2019 at 1:54 PM from 380-333-1120

---

[30] https://www.nomorobo.com/lookup/740-473-7954

- February 28, 2019 at 12:56 PM from 937-200-1288

- March 4, 2019 at 3:26 PM from 380-333-1120

- March 7, 2019 at 10:55 AM from 330-222-3129

- March 11, 2019 at 11:14 AM from 513-447-6273

- March 27, 2019 at 10:46 AM from 567-206-8103

56.     Plaintiff also received a call from 866-288-6212 prior to January 22, 2019 to her

cell phone, which is a phone number associated with Royal Protection Plan:



57.     In total, Plaintiff received at least 10 unsolicited, prerecorded calls to her cellular

phone, despite multiple opt-out attempts that included speaking to a Palmer supervisor.

58.     Plaintiff's cellular phone is used for personal use only and is not associated with a

business.

59.     Plaintiff does not have a relationship with Palmer, or any of its affiliated

companies, nor has she ever consented to any contact from Defendant.

---

[31] http://www.royalprotectionplan.com/home/contact

60.     Simply put, Palmer did not obtain Plaintiff's prior express written consent to place any solicitation telephone calls to her using a prerecorded voice message.

61.     Defendant's unauthorized telephone calls harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Bigham's use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

62.     Seeking redress for these injuries, Bigham, on behalf of herself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded voice calls to landline and cellular phone and numbers.

## CLASS ALLEGATIONS

**Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From Calls Made by OCC Agents, for Which Palmer Should Be Held Liable As Well**

63.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following four Classes:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendants called, (2) for the same reason that Defendants called Plaintiff Miskokomon, (3) using the same calling equipment Defendants used to call Plaintiff Miskokomon, and (4) for whom Defendants (a) claim they obtained prior express written consent in the same manner as they claim to have obtained prior express written consent to call Plaintiff Miskokomon, or (b) do not claim to have obtained prior express written consent.

> **Autodialed Stop Class**: All persons in the United States who from four years prior to the filing of this action (1) Palmer or an agent of Palmer called, (2) using the same calling equipment Palmer or an agent of Palmer used to call Plaintiff Miskokomon, (3) after the person informed Defendant Palmer or an agent of Palmer that s/he no longer wished to receive phone calls from Defendants.

> **Prerecorded Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant Palmer (or agents acting on behalf of Defendant Palmer) called, (2) using a prerecorded voice message, (3) for

substantially the same reason Defendant Palmer or their agents called Plaintiff Bigham.

**Prerecorded Stop Class**: All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant Palmer (or an agent acting on behalf of Defendant Palmer) called, (2) on the person's cellular phone (3) using a prerecorded message, (4) after they informed Defendant Palmer or Defendant Palmer's agent, that they no longer wished to receive phone calls from Defendant Palmer or Palmer's agent.

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendants called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the DNC for at least thirty days, (4) for the same reason Defendants called Plaintiffs, and (5) for whom Defendants (a) claim they obtained prior express written consent in the same manner as they claim to have obtained prior express written consent to call Plaintiffs, or (b) do not claim to have obtained prior express written consent.

**Do Not Call Stop Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendants called more than one time, (2) within any 12-month period, (3) at least thirty days after the person informed Defendants that s/he no longer wished to receive phone calls from Defendants, (4) for the same reason Defendants called Plaintiffs.

64.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against either Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

65.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

66.     **Commonality and Predominance**: There are many questions of law and fact

18

common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

> (a) whether Defendants used an automatic telephone dialing system to make calls to Plaintiff and the members of the Classes;
>
> (b) whether Defendants systematically made multiple telephone calls to Plaintiff and consumers whose telephone numbers were registered with the DNC;
>
> (c) whether Defendants made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;
>
> (d) whether Defendants made calls to Plaintiff and members of the Classes after they told Defendants to stop calling;
>
> (e) whether Defendants' conduct constitutes a violation of the TCPA; and
>
> (f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

67.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and the Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

68.    **Appropriateness**: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiffs. Additionally,

the damages suffered by individual members of the Classes will likely be small relative to the

burden and expense of individual prosecution of the complex litigation necessitated by

Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to

obtain effective relief from Defendants' misconduct on an individual basis. A class action

provides the benefits of single adjudication, economies of scale, and comprehensive supervision

by a single court. Economies of time, effort, and expense will be fostered and uniformity of

decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Miskokomon and the Autodialed No Consent Class)**

69.     Plaintiff repeats and realleges paragraphs 1 through 68 of this Complaint and

incorporates them by reference herein.

70.     Defendants made unwanted solicitation telephone calls to Plaintiff and the other

members of the Autodialed No Consent Class using an autodialer.

71.     These solicitation telephone calls were made *en masse* without the consent of the

Plaintiff and the other members of the Autodialed No Consent Class to receive such calls.

72.     Defendants did not have consent from the Plaintiff orally or in writing to call him.

73.     Defendants have, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B),

entitling Plaintiff and other members of the Autodialed No Consent Class to between $500 and

$1,500 per violation.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Miskokomon and the Autodialed Stop Class)**

74.     Plaintiff repeats and realleges paragraphs 1 through 68 of this Complaint and

incorporates them by reference.

75.     Defendants made unwanted solicitation telephone calls to Plaintiff and the other

members of the Autodialed Stop Class using an autodialer after being told to stop calling.

76.     These solicitation telephone calls were made *en masse*.

77.     Defendants have, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B), entitling Plaintiff and other members of the Autodialed Stop Class to between $500 and $1,500 per violation.

### THIRD CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Bigham and the Prerecorded No Consent Class)**

78.     Plaintiff repeats and realleges paragraphs 1 through 68 of this Complaint and incorporates them by reference herein.

79.     Defendant and/or its agents made unwanted solicitation telephone calls to Plaintiff and the other members of the Prerecorded No Consent Class using a prerecorded voice message.

80.     These prerecorded voice message calls were made *en masse* without the consent of the Plaintiff and the other members of the Prerecorded Class.

81.     Defendant's conduct was negligent or wilful and knowing.

82.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the Prerecorded are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### FOURTH CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Bigham and the Prerecorded Stop Class)**

83.     Plaintiff repeats and realleges paragraphs 1 through 68 of this Complaint and incorporates them by reference.

84.     Defendant and/or its agents made unwanted solicitation telephone calls to telephone numbers belonging to Plaintiff and the other members of the Prerecorded Stop Call Class after being told to stop calling.

85.     These solicitation telephone calls were made *en masse*.

86.     Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(B). As a result of Defendant's conduct, Plaintiff and the other members of the Prerecorded Stop Call Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### FIFTH CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs Miskokomon and Bigham and the Do Not Call Registry Class)**

87.     Plaintiff repeats and realleges the paragraphs 1 through 68 of this Complaint and incorporates them by reference herein.

88.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

89.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[32]

90.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

91.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this

---

[32] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

92. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

93. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period in violation of 47 C.F.R. § 64.1200, as described above, entitling Plaintiff and other members of the Do Not Call Registry Class to between $500 and $1,500 per violation.

### SIXTH CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs Miskokomon, Bigham, and the Do Not Call Stop Class)**

94. Plaintiff incorporates by reference paragraphs 1 through 68 of this Complaint and incorporates them herein by reference.

95. Defendants violated 47 C.F.R. §64.1200 by initiating calls for telemarketing purposes to telephone subscribers such as Plaintiff and the Do Not Call Stop Class who specifically informed Defendants to stop calling them, and who received additional calls within a 12-month period from Defendants at least thirty (30) days after informing Defendants to stop calling them. Defendants made these calls without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

96. As a result of Defendants' unlawful conduct, Defendants violated 47 U.S.C. §

227(c)(5) entitling Plaintiff and other members of the Do Not Call Stop Class to between $500 and $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

a) An order certifying the Classes as defined above; appointing Plaintiffs as the representatives of the Classes; and appointing their attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendants' actions, as set out above, violate the TCPA;

d) An injunction requiring Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs request a jury trial.

Respectfully Submitted,

**WILLIAM MISKOKOMON and CARLA BIGHAM**, individually and on behalf of all other similarly situated individuals

Dated: June 16, 2020

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
1072 Madison Ave. Suite 1
Lakewood, NJ 08701
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (pro hac vice)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127

Telephone: (305) 469-5881

*Attorneys for Plaintiffs and the putative Classes*